## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMES WHITE, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No. |
| v. | ) ) | **CLASS ACTION COMPLAINT FOR** |
| TCF FINANCIAL CORPORATION, CRAIG R. DAHL, VANCE K. OPPERMAN, PETER BELL, ROGER JEROME SIT, WILLIAM F. BIEBER, GEORGE G. JOHNSON, BARRY N. WINSLOW, DR. JULIE H. SULLIVAN, THERESA WISE, THEODORE J. BIGOS, KAREN L. GRANDSTRAND, and RICHARD H. KING, | ) ) ) ) ) ) ) ) ) ) ) | **VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**  <br><br> **JURY TRIAL DEMANDED** |
| Defendants. | | |

Plaintiff James White ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.     This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of TCF Financial Corporation ("TCF" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with TCF, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100 in connection with the proposed merger (the "Proposed Merger") between TCF and Chemical Financial Corporation. ("Chemical").

2.     On January 27, 2019, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders stand to receive 0.5081 shares of common stock of Chemical for each share of TCF stock they own (the "Merger Consideration"). Upon completion of the merger, Chemical stockholders will own 46.2 percent and TCF stockholders will own 53.8 percent of the combined company.

3.     On March 29, 2019, in order to convince TCF shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading Form S-4 Registration Statement (the "S-4") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act. The materially incomplete and misleading S-4 violates both Regulation G (17 C.F.R. § 244.100) and SEC Rule 14a-9 (17 C.F.R. 240.14a-9), each of which constitutes a violation of Section 14(a) and 20(a) of the Exchange Act.

4.     While touting the fairness of the Merger Consideration to the Company's shareholders in the S-4, Defendants have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Merger, thereby violating SEC rules and regulations and rendering certain statements in the S-4 materially incomplete and misleading.

5.     In particular, the S-4 contains materially incomplete and misleading information concerning the financial projections for the Company that were prepared by the Company and relied on by Defendants in recommending that TCF shareholders vote in favor of the Proposed Merger. The financial projections were also utilized by TCF's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"), in conducting certain valuation analyses in support of its fairness opinion.

6.      It is imperative that the material information that has been omitted from the S-4 is disclosed prior to the forthcoming vote to allow the Company's shareholders to make an informed decision regarding the Proposed Merger.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violation of (i) Regulation G (17 C.F.R. § 244.100) and (ii) Rule 14a-9 (17 C.F.R. 240.14a-9). Plaintiff seeks to enjoin Defendants from holding the shareholders vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless, and until, the material information discussed below is disclosed to TCF shareholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because TCF is incorporated in this District.

## PARTIES

11.    Plaintiff is, and at all relevant times has been, a holder of TCF common stock.

12.    Defendant TCF is incorporated in Delaware and maintains its principal executive offices at 200 Lake Street East, Wayzata, MN 55391.  The Company's common stock trades on the NYSE under the ticker symbol "TCF."

13.    Individual Defendant Craig R. Dahl is TCF's President, Chief Executive Officer ("CEO") and Chairman and has been a director of TCF since 2012.

14.    Individual Defendant Vance K. Opperman has been a director of TCF since June 2009, and its Lead Director since January 2014.

15.    Individual Defendant Peter Bell has been a director of TCF since November 2009.

16.    Individual Defendant Roger Jerome Sit has been a director of TCF since January 2015.

17.    Individual Defendant William F. Bieber has been a director of TCF since April 1997.

18.    Individual Defendant George G. Johnson has been a director of TCF since April 1998.

19.    Individual Defendant Barry N. Winslow has been a director of TCF since July 2008.

20.    Individual Defendant Dr. Julie H. Sullivan has been a director of TCF since April 2016.

21.    Individual Defendant Theresa Wise has been a director of TCF since February 2019.

22.    Individual Defendant Theodore J. Bigos has been a director of TCF since October 2008.

23. Individual Defendant Karen L. Grandstrand has been a director of TCF since October 2010.

24. Individual Defendant Richard H. King has been a director of TCF since July 2014.

25. The Individual Defendants referred to in paragraphs 13-24 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

## CLASS ACTION ALLEGATIONS

26. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of TCF (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

27. This action is properly maintainable as a class action because:

a. The Class is so numerous that joinder of all members is impracticable. As of April 1, 2019, there were approximately 163,980,000 shares of TCF common stock outstanding, held by hundreds of individuals and entities scattered throughout the country. The actual number of public shareholders of TCF will be ascertained through discovery;

b. There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i) whether Defendants disclosed material information that includes non-GAAP financial measures without providing a reconciliation of the same non-GAAP financial measures to their most directly comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act;

       ii)      whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the S-4 in violation of Section 14(a) of the Exchange Act;

       iii)     whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

       iv)     whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Merger based on the materially incomplete and misleading S-4.

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.      A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

<u>**SUBSTANTIVE ALLEGATIONS**</u>

**I.    The Proposed Merger**

28.    TCF is a national bank holding company with $23.7 billion in total assets and 314 bank branches. TCF provides a full range of consumer facing and commercial services, including consumer banking services, commercial banking services, commercial leasing and equipment financing. The Company's primary funding source for its loan and lease growth is its retail deposits.  TCF's growth strategies include organic growth in existing businesses, development of new products and services, new customer acquisition and acquisitions of portfolios or businesses. The Company designs its new products and services to build on existing businesses and expand into complementary products and services.

29.    On January 28, 2019, TCF and Chemical issued a joint press release announcing the Proposed Merger, which states in pertinent part:

> **DETROIT, MI & WAYZATA, MN** - January 28, 2019 – Chemical Financial Corporation ("Chemical") (NASDAQ: CHFC) and TCF Financial Corporation ("TCF") (NYSE: TCF) today announced the signing of a definitive agreement under which the companies will combine in an all-stock merger of equals transaction. Under the terms of the agreement, which was unanimously approved by the boards of directors of both companies, TCF will merge into Chemical, and the combined holding company and bank will operate under the TCF name and brand following the closing of the transaction.
>
> The merger combines two complementary banking platforms to create a premier Midwest bank that will be uniquely positioned to capitalize on market opportunities and broaden the channels and customers it serves through increased scale and expanded product offerings. The combined company will have approximately $45 billion in assets, $34 billion in total deposits and more than 500 branches across nine states, including four of the top 10 Midwest markets. It will leverage the strengths of Chemical's community banking and wealth management capabilities with TCF's large deposit franchise and expertise in wholesale lending on a national basis.
>
> "With a shared strategic vision and increased scale and capabilities, our two complementary banking platforms will be positioned to better serve our customers

and communities," said Chemical's Chairman Gary Torgow. "The combination of TCF and Chemical creates the largest midcap bank in the Midwest, poised to deliver double-digit EPS accretion for each set of shareholders, significant cost synergies, top-tier return metrics, a more diversified balance sheet and a lower risk profile. We also share a deep commitment to supporting and giving back to the communities we serve."

TCF Chairman, CEO and President Craig Dahl said, "We are confident that this merger will enhance our ability to deliver stronger and more sustainable growth and greater value creation than either company could achieve alone. The new TCF will have attractive positions in both its product suite and market footprint as well as a more diversified loan portfolio and increased lending capabilities across asset classes, geographies and industry verticals. Through improved profitability and earnings predictability, we will be able to reinvest in the business to drive multiple growth engines, enhance our ability to compete in the next generation of banking and sustain consistent return on capital for shareholders. We believe the combined company will also create new opportunities for our employees and enable us to attract and retain top talent."

**Strategic Benefits of the Merger**

**Enhanced scale and capabilities:** The combined organization will be strategically positioned to capitalize on market opportunities and better serve its customers throughout several of the largest, most attractive markets in the Midwest. Together, the companies will have the scale to better invest, compete and outperform by leveraging leading market positions and complementary products. Limited overlap of markets and product suites will benefit customers through a consistent go-to-market approach and minimal disruption.

**Accelerates achievement of each company's strategic priorities:** Complementary operations with limited overlap will broaden the opportunities to drive sustainable growth and increase market share. TCF's strength in national lending verticals complements Chemical's core in-market commercial lending and wealth management offerings. The two banks' shared strengths in infrastructure, digital platforms, and mortgage banking will enhance the combined organization's position while improving efficiency.

**More balanced deposit mix and loan portfolio:** The combination creates a more diversified deposit mix between retail and commercial business lines and a more balanced loan portfolio across geographies, asset classes and commercial industries. On a combined basis, the company expects to have increased capacity for loan growth while maintaining its current risk thresholds.

**Complementary values and community focus:** Both organizations share a legacy of developing deep community ties, along with core values centered on customer service, accountability, and adaptability to market changes. The combined

organization will have a stronger, deeper leadership team with complementary expertise to drive enhanced operational performance, strategic growth, and risk management. In addition, the combined bank will continue to provide philanthropic, civic, and economic development support to the communities in which it operates.

## Financial Benefits of the Merger

The transaction is projected to deliver 17% EPS accretion to Chemical and 31% EPS accretion to TCF by 2020, with a tangible book value earn-back period of 2.7 years. Pro forma merged company financial metrics are based on each company's stand-alone consensus median analyst estimates, estimated combined company cost synergies, anticipated purchase accounting adjustments, and the expected merger closing time-frame. On a pro forma basis, the business is expected to deliver top-tier operating and return metrics with cost savings on a fully-phased in basis, including:

- Return on Average Tangible Common Equity of approximately 19%
- Return on Average Assets of approximately 1.6%, and
- Efficiency ratio of approximately 53%.

In addition, the transaction is expected to generate approximately $180 million in annual run-rate cost synergies by 2020, with minimal reductions in branches.

## Transaction Details

Under the terms of the agreement, TCF shareholders will receive 0.5081 shares of Chemical common stock for each share of TCF common stock based on a fixed exchange ratio, equivalent to $21.58 per TCF share based on the closing price as of January 25, 2019. Each outstanding share of 5.70% Series C Non-Cumulative Perpetual Preferred Stock of TCF will be converted into the right to receive one share of a newly created series of preferred stock of Chemical. Upon completion of the deal, TCF and Chemical shareholders will own 54% and 46% of the combined company, respectively, on a fully diluted basis.

## Governance and Leadership

The combined company will be headquartered in Detroit and maintain a significant operating presence in Minneapolis as well as Midland and Chicago. The combined company will be led by:

- Gary Torgow, who will serve as executive chairman of the board of directors;
- Vance Opperman, who is the current lead independent director of TCF Financial Corporation's board of directors, will serve as lead independent director;

- Craig Dahl, who will serve as CEO and president;
- Dennis Klaeser, who will serve as CFO;
- Brian Maass, who will serve as deputy CFO and treasurer; and

David Provost will become chairman of the combined bank and Tom Shafer will become president and COO of the combined bank.

Additional leadership team members will be comprised of highly experienced and proven executives that reflect the strengths and capabilities of both banks and will share equally in the integration process.

The combined company's board of directors will have sixteen directors, consisting of eight directors from TCF and eight directors from Chemical.

**Timing and Approvals**

The merger is expected to close in the late third or early fourth quarter of 2019, subject to satisfaction of customary closing conditions, including receipt of customary regulatory approvals and approval by the shareholders of each company.

**Advisors**

Keefe, Bruyette & Woods is acting as financial advisor to, and rendered a fairness opinion to the board of directors of, Chemical. Nelson Mullins Riley & Scarborough, LLP and Wachtell, Lipton, Rosen & Katz are serving as legal counsel to Chemical. J.P. Morgan Securities LLC is acting as lead financial advisor to, and rendered a fairness opinion to the board of directors of, TCF. Perkins Advisors, LLC is also acting as financial advisor to TCF, and Simpson Thacher & Bartlett LLP is serving as legal counsel.

**Joint Conference Call and Webcast Details**

Chemical and TCF will conduct a live conference call and webcast to discuss the transaction at 10 am Eastern Time today. To listen to the live call, please dial 888-378-4398 and enter 575396 for the conference ID. The webcast, along with related slides, will be available on both the Chemical website (www.chemicalbank.com) and the TCF website (ir.tcfbank.com), as well as through the joint transaction website, www.PremierMidwestBank.com. A replay of the conference call will be available via the websites listed above.

As a result of today's merger announcement, both companies have cancelled their previously scheduled 2018 fourth quarter earnings conference calls.

**About Chemical Financial Corporation**

Chemical Financial Corporation is the largest banking company headquartered and operating branch offices in Michigan. Chemical operates through its subsidiary bank, Chemical Bank, with 212 banking offices located primarily in Michigan, northeast Ohio and northern Indiana. As of December 31, 2018, Chemical had total consolidated assets of $21.5 billion. Chemical Financial Corporation's common stock trades on The NASDAQ Stock Market under the symbol CHFC and is one of the issuers comprising The NASDAQ Global Select Market and the S&P MidCap 400 Index. More information about Chemical Financial Corporation is available by visiting the "Investor Information" section of its website at www.chemicalbank.com.

**About TCF Financial Corporation**

TCF is a Wayzata, Minnesota-based national bank holding company. As of December 31, 2018, TCF had $23.7 billion in total assets and 314 bank branches in Illinois, Minnesota, Michigan, Colorado, Wisconsin, Arizona and South Dakota providing retail and commercial banking services. TCF, through its subsidiaries, also conducts commercial leasing and equipment finance business in all 50 states and commercial inventory finance business in all 50 states and Canada. For more information about TCF, please visit http://ir.tcfbank.com

30.     In sum, it appears that TCF is well-positioned for financial growth and the Merger Consideration fails to adequately compensate the Company's shareholders. It is imperative that Defendants disclose the material information they have omitted from the S-4, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Merger.

## II.     The Materially Incomplete and Misleading S-4

31.     On March 29, 2019, Defendants caused the S-4 to be filed with the SEC in connection with the Proposed Merger. The S-4 solicits the Company's shareholders to vote in favor of the Proposed Merger. Defendants were obligated to carefully review the S-4 before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the S-4 misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed

decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### The Materially Misleading Financial Analyses

32.     The S-4 fails to provide material information concerning the Company's financial projections, which were developed by the Company's management and relied upon by the Board in recommending that the shareholders vote in favor of the Proposed Merger.  S-4 69-70.

33.     The financial projections at issue were relied upon by the Company's financial advisor, J.P. Morgan, in connection with its valuation analyses and respective fairness opinions. *Id.* at 89-90.  The opacity concerning the Company's internal projections renders the valuation analyses described below materially incomplete and misleading, particularly as a substantial amount of information has failed to be disclosed.  Once a registration statement discloses internal projections relied upon by the Board, those projections must be complete and accurate.

34.     With respect to J.P. Morgan's *TCF Public Trading Multiples Analysis* ("Multiple Analysis"), the S-4 states that J.P. Morgan calculated the ". . . multiple of price to estimated 2019 earnings per share (which we refer to as 'P/FY 2019E EPS'); and a regression analysis to review the relationship between (i) the multiple of price to tangible book value (which we refer to as 'P / TBV') and (ii) the estimated 2019 return on average tangible common equity (which we refer to as 'FY 2019E ROATCE') based on available estimates obtained from public filings and FactSet Research Systems[.]"  *Id.* at 89.  Despite disclosing managements estimates of Earnings Per Share for fiscal year 2019, the S-4 fails to disclose the line items used to calculate this number which are necessary to reconcile the difference between management's internal projections and the disclosed Wall Street research estimates for TCF fiscal year 2019. The absence of this information renders J.P. Morgan's Public Trading Multiples Analysis incomplete and misleading.

35.     Historically, analysts have been bullish on TCF. For the majority of the period between May 2016-April 2019, analyst consensus has been that the stock is worth more than the market currently values it. Over the 35-month period, the stock has only been worth more than analyst predictions for 11 months, or 31% of the time.[1]  Additionally, since October 2018, the stock has suffered from extreme volatility reducing its stock price from a high of $27.20 on June 8, 2018 to a low of $18.32 on December 24, 2018, a decrease of 32.6%.  The volatility was so extreme that it caused talks regarding the Proposed Merger between TCF and Chemical to break down. S-4 62.  However, during this time period, analysts' consensus was to maintain a hold rating while some upgraded to a buy rating.  As of April 1, 2019, analyst's consensus is that the stock price will be $26.58,[2] representing a 25.1% gain over the current market price.  Clearly, analysts see the strength of the company and understand its true value.

36.     When J.P. Morgan calculated its P/FY 2019E EPS, it used a management projected 2019 earnings per share ("EPS") of $2.10 per share.  S-4 74.  This is in contrast to disclosed Wall Street research estimates of 2019 EPS of $1.92.  *Id.*  Management has projected a 2019 EPS 9.375% larger than the Wall Street research estimates.

37.     The S-4 also discloses that J.P. Morgan was given a management projection of Net Income Available to Common Shareholders of $327 million to be used instead of the Wall Street research estimates of $311 million, representing a 5.1% increase over Wall Street estimates.  *Id.* J.P. Morgan does not disclose what if anything they used that estimate for.

---

[1]     NYSE:TCF – TCF Financial Price Target & Analyst Ratings, https://www.marketbeat.com/stocks/NYSE/TCF/price-target/?MostRecent=0 ("MarketBeat") (last visited Apr. 12, 2019).
[2]     *See* MarketBeat.

38.     TCF does not disclose how it has calculated its management's projections, which are substantially higher than Wall Street estimates.  Nor does the Company disclose why it believes analysts, which have historically been bullish on TCF, are systematically undervaluing the company.  Moreover, J.P. Morgan does not state why it uses management's projections rather than the Wall Street estimates.  J.P. Morgan's use of management's higher projections makes even less sense when considering that J.P. Morgan's latest analyst report projects TCF's EPS at $1.80 for 2019.[3] Therefore, J.P. Morgan used a projected EPS 16.67% higher than what it internally projected for the Company.  Without the calculations used by management or at least J.P. Morgan's rationale for using management's numbers over the Wall Street estimates, the Multiple Analysis is materially incomplete and/or misleading.

39.     Additionally, J.P. Morgan performed a regression analysis on comparable companies of (i) the multiple of price to tangible book value ("P / TBV") and (ii) the estimated 2019 return on average tangible common equity ("FY 2019E ROATCE") based on available estimates obtained from public filings and FactSet Research Systems.  S-4 at 88-89.  Tangible Book Value is a non-generally accepted accounting principle ("GAAP") metric.

40.     When a company discloses non-GAAP financial measures in a registration statement that were relied on by a board of directors to recommend that shareholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or

---

[3]     Steven Alexopoulos, CFA, Janet Lee, Alex Lau, Anthony Elian, CFA, *TCF Financial Corporation – Suspending Rating and Price Target for TCF; TCF Merges into Chemical (CHCF); Factual Summary*, J.P.Morgan Analyst Report, Jan. 28, 2019, at 1.

released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.

41.    Indeed, the SEC has increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders.  Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as TCF included in the S-4 here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation.  Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors.  And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[4]

42.    Thus, in order to bring the S-4 into compliance with Regulation G as well as cure the materially misleading nature of the projections under SEC Rule 14a-9 as a result of the omitted information, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures and/or disclose the line item projections for the financial metrics that were used to calculate the aforementioned non-GAAP measures.  Such projections are necessary to make the non-GAAP projections included in the S-4 not misleading.

---

[4]    Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (emphasis added) (footnotes omitted) (last visited Apr. 12, 2019).

43.     Because neither the method nor the line items used to calculate Tangible Book Value were disclosed, shareholders are unable to discern the veracity of J.P. Morgan's Multiple Analysis.   Without further disclosure, shareholders are unable to compare J.P. Morgan's calculations with the Company's financial projections.   Thus, the Company's shareholders are being materially misled regarding the value of the Company.

44.     In Calculating TCF's P / TBV, J.P Morgan also used a management estimate of return on average tangible common equity ("ROATCE") of 15.3%.   S-4 at 89.   Management's estimate of ROATCE was then used in combination with TCF's tangible book value per share to determine a multiple range to apply in the P / TBV analysis.   The Company needs to disclose how it calculated its estimate of ROATCE because the implied Merger Consideration is below J.P. Morgan's implied equity value per share calculation.   This information is material because without it, shareholders will not be able to identify for themselves if the 15.3% ROATCE is a fair estimate, and therefore will not be able to verify J.P. Morgan's analysis. Thus, the Company's shareholders are being materially mislead regarding the value of the Company.

45.     When J.P. Morgan preformed its Multiple Analysis, it used 8 comparable regional banks to determine a multiple reference range.   S-4 88-89.   However, the Multiple Analysis only discloses the range of the calculated multiples.   *Id.* at 89.   This is misleading because it is missing the mean and median which gives context to the range of multiples.   Without this information, it is impossible to tell if there are outliers in the data. This information is material because J.P. Morgan is using these multiples to determine an implied equity value per share.   Without knowing the mean and median of the multiples, it is impossible to know where the Merger Consideration falls in the range.   Indeed, as of January 25, 2019, the last trading day before J.P. Morgan delivered its fairness opinion, the implied equity value per share was $21.58.   This is $0.07 below J.P.

Morgan's P / FY 2019E EPS low estimate of implied equity value per share and $1.45 below the P / TBV low estimate implied equity value per share. *Id.* at 89. Therefore, without this omitted information, shareholders are being materially mislead about the value of the Company.

46.    J.P. Morgan also prepared a *Dividend Discount Analysis* to determine the implied equity value per share. *Id.* at 89-90. In calculating the terminal value, J.P. Morgan relied on TCF management's internal forecast of 3% net income growth to base its estimate of 2024 net income. *Id.* at 74. However, TCF only discloses Net Income Available to Common Shareholders, not net income. *Id.* In TCF's most recently filed 10-K, Net Income Available to Common Stockholders is defined as Net income attributable to TCF minus Preferred Stock Dividends and the Impact of Preferred Stock Redemption.[5] Providing a forecasted net income growth rate is not enough to bring a shareholder from TCF's disclosed 2019 estimate of Net Income Available to Common Shareholders to J.P. Morgan's 2024 estimate of net income. TCF did not disclose estimated Preferred Stock Dividends nor the Impact of Preferred Stock Redemption needed to reconcile projected Net Income Available to Common Shareholders to net income.

47.    Even if TCF were to disclose the 2019 projection for Preferred Stock Dividends and the Impact of Preferred Stock Redemption, that would still not be enough to cure the misleading nature of the disclosures. TCF states that the Company is forecasted to have a long-term annual growth rate of 3% for net income and JP Morgan refers to this number as the internal forecast of net income. It is unclear for what years JP Morgan used this 3% net income growth estimate for, and it was used in calculating net income from 2019-2024 it is unclear if that was proper, because TCF is still growing at the rate of a growth company, not a mature company and

---

[5] TCF, Annual Report for the Fiscal Year Ending December 31, 2018 (Form 10-K) (February 26, 2019)

therefore the use of a long-term annual growth rate rather than a short term one is not justified. According to TCF's latest 10-K, Net Income attributable to TCF Financial Corporation was $304,358 thousand in 2018.[6] This is an increase from 2017 and 2016 where TCF reported $268,637 thousand and $212,124 thousand respectively.[7] Thus, net income grew an impressive 26.6% between 2016 and 2017 and a respectable 13.3% between 2017 and 2018. It is unclear that using a 3% growth rate would be proper considering TCF's year over year growth percentage.

48.    Even using TCF's disclosed 2019 Net Income Available to Common Stockholders number, assuming the Preferred Stock Dividends and Impact of Preferred Stock Redemption remain constant, TCF estimates that Net Income Available to Common Stockholders will increase by 13% in 2019. S-4 74. Therefore, in order to cure the misleading nature of TCF's net income disclosures, TCF must disclose the net income calculations for the years 2019-2014 or at the very least net income in 2019 and 2024 and the applicable growth rate for each year. Additionally, if the Company insists on using a 3% growth rate to project net income from 2019-2024, the Company must explain why net income will have had such a sharp decrease in year over year growth in light of TCF's historical data in order to make the disclosures not misleading.

49.    It is all the more important that TCF disclose the net income calculations because in J.P. Morgan's *Dividend Discount* Analysis, after applying the terminal multiples and discount rates, only one implied equity value (10x multiple with a 11% discount rate, the worst possibility) was below the implied equity value per share as of January 25, 2019. *Id.* at 90. Had management provided J.P. Morgan with a different growth rate, it is possible the implied equity value as of

---

[6] TCF, Annual Report for the Fiscal Year Ending December 31, 2018 (Form 10-K) (February 26, 2019)

[7] TCF, Annual Report for the Fiscal Year Ending December 31, 2018 (Form 10-K) (February 26, 2019)

January 25, 2019 would have been completely outside J.P. Morgan's estimated equity value. Due to the importance of the long-term growth rate, it is necessary for the Company to disclose how it was calculated. Without the line item calculations, shareholders are being materially misled about the value of the Company due to the incomplete and misleading Dividend Discount Analysis.

50.      In sum, the S-4 independently violates both: (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial to their most directly comparable GAAP equivalent; and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading. As the S-4 independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the S-4 to garner votes in support of the Proposed Merger from TCF shareholders.

51.      Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will not be able to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and
17 C.F.R. § 244.100 Promulgated Thereunder)**

52.      Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53.      Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the

Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

54.    As set forth above, the S-4 omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a).  SEC Regulation G, among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure.  17 C.F.R. § 244.100(a).

55.    The failure to reconcile the non-GAAP financial measure included in the S-4 violates Regulation G and constitutes a violation of Section 14(a).

## COUNT II

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and
Rule 14a-9 Promulgated Thereunder)**

56.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

57.    SEC Rule 14a-9 prohibits the solicitation of shareholder votes in registration statements that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading[.]" 17 C.F.R. § 240.14a-9(a).

58.    Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that

measure . . . contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure . . . not misleading*." 17 C.F.R. § 244.100(b) (emphasis added).

59.    Defendants have issued the S-4 with the intention of soliciting shareholder support for the Proposed Merger.  Each of the Defendants reviewed and authorized the dissemination of the S-4, which fails to provide critical information regarding, amongst other things, the financial projections for the Company.

60.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as directors and/or officers, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the S-4, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

61.    The Individual Defendants knew or were negligent in not knowing that the S-4 is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

62.    The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading.

63.    The Individual Defendants were, at the very least, negligent in preparing and reviewing the S-4.  The preparation of a registration statement by corporate insiders containing

materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the S-4 or failing to notice the material omissions in the S-4 upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

64. TCF is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the S-4.

65. The misrepresentations and omissions in the S-4 are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

**COUNT III**

**(Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act)**

66. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

67. The Individual Defendants acted as controlling persons of TCF within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors and/or officers of TCF, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

68.     Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

69.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same.   The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.   They were thus directly involved in preparing the S-4.

70.     In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.   The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

71.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

72.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.    Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted from the S-4;

C.    Directing Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing and to award damages arising from proceeding with the Proposed Merger;

D.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated:  April 12, 2019

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Tel.: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By: _/s/ Michael Van Gorder_
Michael Van Gorder (#6214)
3828 Kennett Pike, Suite 201
Wilmington, DE 19807
Tel.: (302) 482-3182
Email: mvangorder@faruqilaw.com

*Counsel for Plaintiff*                    *Counsel for Plaintiff*